Unit School District No. 2, Ed. v. Board of Education, No. 5, 18-0519. May it please the Court, my name is Don Sampen. I represent the Defendant Boards in this case. I know that your Honors have read the briefs, so let me just summarize very quickly that the issue here is whether plaintiff employees are entitled to compensation in excess of what their contracts provide. The official school closing date as originally planned for the 2014-2015 school year concluded on May 28, 2015, but due to the excess number of snow days that year, the calendar had to be adjusted by a couple of days. The employees worked only the exact number of days and were paid for the exact number of days called for by their contracts. The trial court judge nonetheless held that they were entitled to extra compensation for those two extra days based upon Section 10-19 of the Illinois School Code. What that section provides is that in the event of an extension of the original closing date, the school employees shall be paid for such additional time on the basis of their regular contracts. The trial court here construed the term extension and additional time to mean additional compensation, and that, we suggest, is where the error occurred. The statute does not say that the employees are entitled to additional compensation. It could have said that if that's what the legislature intended. Instead, the statute says that the employees are to be paid not additional compensation, but compensation based upon their regular contracts. Excuse me. Are these collective bargaining agreements multi-year contracts? They are, Your Honor, yes. And as I read the contract, it was for so many days to be paid, not by calendar. Yes. Well, it was so many days pursuant to the official school calendar set by the Marion School Board, yes. But in the collective bargaining agreements, there weren't dates set out. There weren't specific dates, apart from being tied to the official school calendar. Calendar. Yes. And then did they have in the collective bargaining agreements the steps that would be paid as the usually paid teacher? They had all sorts of add-ons, depending upon if you have extracurricular activities, if you have additional education background. Yes, of course. Those were all set forth in schedules to the contracts. Yes. Thank you. And if these contracts here had provided for additional compensation in the event of an adjustment of the school closing date, then, of course, the plaintiff's employees would be entitled to additional compensation. But if they did not provide for such compensation, then none is owed. Counsel, in this case, wasn't the board approached with, hey, let's seek a declaration of an act of God from the state, and then the board declined to do that, and now here we are because we've got these additional days that we wouldn't have had otherwise? Well, that is certainly one of the – if your question is, can the board declare snow days as act of God days, it can try to do so, and it declined to do so in this case. And I think it acted in the utmost of good faith in declining to declare these as act of God days that they wouldn't have to make up. As we pointed out in our opening brief, the school attendance days in this particular – for this particular year had already been reduced from 176 to 174. And if you were to declare these two snow days as act of God days, then you would have to reduce the school attendance days down to 172. And this is not something that the Merriam School Board takes lightly. Well, if they were reduced, does that mean your state aid gets reduced? If they're declared as act of God days, my understanding is that the school aid is not reduced if the state superintendent approves of the reduction. And it is unlikely, it seems to me, under the circumstances here that the state superintendent would have done so. The school board acted in the utmost of good faith here. There's no claim that the school board didn't act in the best interests of the kids in deciding not to declare these two days as act of God days. And so acting in the best interest of the kids, I think the school board acted appropriately here. We've addressed a number of reasons why we think the trial court's decision is in error. And I'm not going to cover them all in my oral remarks today. But one of the reasons is what I've already pointed out, and that is the trial court's addition to the statute of the term additional compensation. That term is not used in the statute. Could have been, it wasn't. But it says in the case of such necessary extension, school employees shall be paid for such additional time on the basis of their regular contracts. Employees shall be paid means compensation, doesn't it? And these employees were paid for the two days. Your argument is that their contract already includes, because they already have a contract, that that extension means that they don't get any additional pay. When the statute says that unless that extension of term is necessary to provide the minimum number of computable days. So in other words, the school board goes back and extends the school year and requires them to work after that closing date of the school year. It required them to work the full number of days provided for in their contracts. But they changed the date of the school year. And that was within the school board's power and authority to do so in good faith. And these contracts expressly provided that the employees would work their 180 days or their 175 days pursuant to the official school calendar. And that's all that they did here. Assuming that your argument is what this means in the case of such necessary extension, school employees shall be paid for such additional time on the basis of their regular contracts, why would it even be necessary to have that sentence in the statute? It's necessary to have that sentence in the statute for a couple of reasons. One is, Your Honor, that it assures that any adjustment in the school calendar is going to be governed by the regular contracts negotiated by the parties. That's one reason. A second reason is it tells the parties that they can negotiate whatever terms they desire with respect to any adjustments in the original school calendar. So your argument is that they only get paid if their union contract says they get paid? Well, of course. Of course. There's nothing in the statute that says otherwise. But the statute controls the union contract, doesn't it? The statute controls some of the terms of the union contract, yes. If there's a conflict, the statute controls, correct? If there's a conflict, the statute controls. But there's no conflict here. The statute refers to the regular contracts of the parties and says you're compensated on the basis of those regular contracts. And those regular contracts provided for 175, 180 days' work days, and that's all the employees did here. Well, your brief makes no mention of what the union contract says under circumstances such as this, so I assume that there was no mention of an extension in the union contract. There was no express mention of an extension of additional compensation. There was no express mention of an adjustment. That's true. But by the mere fact that the employees here pegged their salary schedules to the official school calendar is a pretty good indication that they were satisfied that the compensation to be paid for any adjusted calendar days was to be included as part of the negotiated salaries. Otherwise, they wouldn't have pegged their salary schedule to the official school calendar. But that's what the statute says, that it's only they only get paid for the extension if there is a necessary extension. I don't think it – I disagree with that, Your Honor. It doesn't say you only get paid for the extension if there's a necessary extension. It says if there's a necessary extension, you get paid pursuant to your regular contract. And if the regular contract provides for additional compensation, then of course they're going to get paid additional or extra compensation. They're entitled to negotiate that. And if it doesn't provide for additional compensation, then none is owed. We pointed out in our opening brief that the school code leaves it up to the parties to negotiate compensation for the employees. And if they have already negotiated extra compensation for an adjusted school calendar, then the plaintiff's interpretation here would end up paying these employees double compensation. And here's what I mean by that. The plaintiffs argue that Section 10-19 requires that the employees be paid above and beyond what their contracts provide. So if they've already negotiated in their contracts extra compensation for an adjusted calendar period, then the employees will be paid once under their contracts extra compensation, and they will be paid a second time extra compensation under the statute. Now, we pointed that out as a problem with the plaintiff's interpretation in our opening brief. Their response, I think, is interesting. Their response is, first of all, they agreed with us that the employees are entitled to negotiate additional compensation for an adjusted calendar period. But second, they said, that if the employees have already done that, then the statute wouldn't apply. Now, I find that construction troubling. I find it troubling because there's nothing in the statute that says that it applies selectively to different contracts. Counsel, would you find it troubling if, I guess their interpretation is, you could negotiate and pay in excess of what the statute provides if, according to their argument, the statute provides, look, nothing's negotiated, you could pay pursuant to the regular contract, but if you negotiate for more, then that's okay? Well, I think there are arguments. No, I don't think that's quite their argument. But I would agree with the proposition that if they negotiate extra compensation when the school calendar is adjusted, then they're entitled to extra compensation pursuant to the terms of their contract. And the plaintiffs agree that they're entitled to negotiate. The plaintiffs have agreed that they're entitled to negotiate the very compensation that we're talking about, in this case, on appeal today. And if they have done so, then the statute would end up paying them double compensation. And the plaintiff's response to that is, oh, no, well, the statute wouldn't apply under those circumstances. And that's what I find troubling, because the statute on its face applies across the board to all contracts. And it says, if there's an adjusted calendar term, you're paid on the basis of your regular contracts. That's what the statute says. I think it's an important point here that the plaintiffs have acknowledged or conceded that they are entitled to negotiate this term in their contracts. It's important because under the state versus AFSCME case that we've cited in the reply brief, if they had a right to negotiate this term in their contract, then they are presumed to have known of such a right at the time that they negotiated the contracts. And if they knew of their right to negotiate, and they didn't expressly provide for it, for additional compensation in their contracts, then I think it's safe to assume that they were satisfied that the compensation provided for in the contracts adequately covered them for the risk of a calendar adjustment. Now, just a couple of additional points I'd make here. Looks like you were about to say something, Justice. No, go ahead. I have that look many times. All right. Fair enough. A couple of additional points, and then I'll sit down and shut up here. One of the plaintiff's arguments is that we could, as you've pointed out, simply declare these as act of God days. I think I've addressed that already. The school board here was acting, it felt, in the best interests of the children in deciding not to declare these as act of God days, and I think that was a legitimate decision based upon the circumstances here. The plaintiffs also argue, well, this whole issue could have been resolved if he just tried to work in these two snow days before the end of the original calendar term was up. The original calendar term expired May 28. The last work day and the last school attendance day was originally scheduled as May 20. Between May 20 and May 28, there was Memorial Day holiday and a weekend. So that left five days, and those five days were devoted to the original budgeted snow day. So it was impossible to work in these two days during that period of time. And prior to May 20, we have school days, we have holidays, and we have weekends. And so as a practical matter, it simply was not possible to work in these two additional days prior to the original closing date of May 28. The other point I would make here is that the plaintiffs repeatedly argue throughout their briefs that according to them, the defendant boards here stipulated to the daily rate of pay for this additional compensation. What we stipulated to is that if you take one number and you divide by 180 days or 175 days, you come out with another number. And we didn't stipulate that that other number had any relevance at all to this litigation. I don't understand why you would use 175 versus 180. Some of the employees were obligated to work 175 days instead of 180. Most of the employees were obligated to work 180 days. If you accept the construction, then these employees would be paid 182 days, correct? That's correct, Your Honor. How would you come up with that number? Divide 180 by the salary they received? I wouldn't come up with that number at all, Your Honor, because I disagree with the analysis. If you were to try to come up with a number, I don't know the best way to do it. Annual salaries, right? These are annual salaries with percentage increases depending on the steps that are in the contract. I mean, you can tell I've been on a school board. That sort of sounds like it, Your Honor. These were annual salaries. There's nothing in the contracts that require a computation of a daily rate of pay, and there's nothing in the statute that requires computation of a daily rate of pay. We've given you examples in our reply brief of statutes that do provide expressly for daily rates of pay. And the fact that this statute did not so provide is all the more reason why the proposed interpretation by the plaintiffs is inappropriate here. So with that, I apparently have a few minutes left, but I'll reserve anything I have. Thank you, counsel. Thank you. Good morning. May it please the Court. My name is Loretta Haggard. I represent the plaintiffs who are class members of these two school districts. Good morning, counsel. Justice Moore, we believe you hit the nail on the head when you said that our argument is, anyway, what does this sentence mean in Section 1019 of the school code if it doesn't mean that if the calendar is extended beyond the original closing date, the employee shall be paid? The way the defendants construe the statute, all it means is you get paid extra if your contract already requires that you get paid extra, in which case it means nothing. Why did the legislature even put it there? We don't think that is a reasonable construction, and we think it is a reasonable construction that the legislature could well have wanted the statute, as distinct from the collective bargaining agreement, to provide that if the calendar was extended beyond the original closing date into the summer, when employees would normally think they could go ahead and plan vacations and the like, then in that case and in that case only, they ought to receive additional compensation. What about this argument that if the union contract says they get paid additional compensation, that they'd be getting paid double because of this interpretation of the statute? We absolutely do not. That is not our position, that they would get paid double. If the contract explicitly provides for payment for days beyond the end of the calendar, then you get paid beyond the end of the calendar. The statute doesn't say you get paid twice for days beyond the end of the calendar. In other words, notwithstanding what the fact that the contract says about extending the calendar, they still get paid pursuant to statute. Is that your understanding of the statute? Well, whether they get paid pursuant to the statute or the contract is kind of immaterial because the point is they get paid once pursuant. How can that be immaterial if the legislature inserted that specific language about the contract? It's not an either-or situation under the plain language of the statute. Well, the analogy that I would make, Your Honor, is a collective bargaining agreement can, for example, provide for payment of minimum wage, all right, and the law provides for payment of minimum wage. That doesn't mean that minimum wage employees get double the minimum wage. It just means that the collective bargaining agreement provides for the same wage as the law does. So in our view, if the collective bargaining agreement expressly provides for additional payment beyond the salary that is allocated to the school term, the original school term, then employees get that under the collective bargaining agreement, and it merely overlaps or duplicates what's in the statute. Well, it seems to me what you're saying is what the statute says. That is, if you have to teach beyond what's bargained for and the calendar is somehow extended, then the contract controls, which is exactly what you're saying. The contract controls. We don't get extra, but the contract controls, which is, I mean, as I look at your argument, school districts need some kind of stability. I'm sure you would agree with that, right? Absolutely. Under your interpretation of the contract, there would be no way for a school district to anticipate, or even the state of Illinois, statewide, to anticipate the kind of financial burden that you're imposing on school districts. Because there would be no way to predict except for snow days or flooding or whatever as to how much extra teachers would be owed above and beyond the terms of their contract under your analysis. Because if they bargain for 180 days and they're paid 180 days, it's your position that they're still entitled to 182 days because the calendar changed. Only in the circumstance where the calendar. Let me modify that. Where the calendar is extended beyond the original closing date. From what point in time? From the point in time that it's set back in August? Correct. So, again, it seems to me that you're imposing at that point. Okay. You have teachers. The teachers collectively bargain with the school district, right? Yes. They know about the statute. They're presumed to know about the statute. Right? Correct. So if the statute is, okay, we have to extend the calendar and we extend it, it seems that the teachers and the other ancillary employees could bargain for that. Well, or the teachers could assume that if it says that in statute, they're already entitled to it whether they bargain it or not. Okay. So I'm having trouble understanding how the court arrived at the word additional compensation when he put in his order, he's not, by finding in this judgment, he's not saying what the policy of the state of Illinois should be with respect to whether employees get paid 182 days when they only worked 180. I didn't understand that paragraph, and maybe because, were you there? I mean, you could explain that. Well, I think what the trial judge was saying is, you know, this is a policy decision that the legislature has made that if the calendar is extended at the end of it, if the closing date is pushed out into the summer, then in that circumstance, there should be additional payment, that he's not going to opine on the wisdom of that, but that it was his job, the court's job, generally to interpret what the statute says. And in answer to your questions, because I do understand and concede the appeal of the district's position when it says, hey, look, we asked for 180 days of service, you gave 180 days of service, you were paid for 180 days of service, what's the problem? I get that. All right? But there were other alternatives that would not have cost the district extra money. We've already talked about Act of God. I wish there had been evidence on the past practice on Act of God. I know, outside the record, that that was the practice, to seek approval for Act of God days. I can't rely on that because it's not in the record, and counsel cannot say, well, we have to assume that would not have been granted because they already were only giving 174 days instead of 176 days. And so we have to assume that would not have been granted because it's not in the record. And so we have to assume that would not have been granted because they already were only giving 174 days instead of 176 days, as contemplated by the statute. We don't have evidence on that, and I don't know whose burden it would have been to present that evidence. But certainly, they could have asked. And they thought of it. There was a motion to propose Act of God days, and the motion was defeated. But that would have been discretionary anyway. I mean, they can't rely on that. Well, that's true. And so then the other point I would make is that the 6th and 7th unbudgeted snow days took place in March. Counsel said there was no place to tack on these extra days between May 20th and May 28th, which was the period allowed for basically snow days and teacher institutes and the like, although they were scattered throughout the year. But make-up days could have been scheduled. For example, they could have said instead of doing two teacher institutes, instead we're going to convert those to student attendance days. So days that the teachers had been scheduled to do institutes between March and the end of May will now be student attendance days. That doesn't involve anyone attending, having to attend school on a weekend or a holiday. All right? They could, I think lawfully, have required that school be in attendance on Saturday. Would that be popular? Obviously not. What about a strike? What if the teachers went on strike for three days or four days or such that the school calendar had to be amended and they had to teach longer? Would this provision apply? Under your analysis, if the teachers go on strike and have to, Any time the school calendar is amended, they have to be paid additional time? Well, I think the school district could still have the discretion to schedule extra days before the end of the school year. Not if they've used up all the time. My hypothetical is it seems to me that under your argument that any time, no matter the circumstance, because the statute doesn't say act of God, but it could include a wide variety of circumstances, including a strike. So if I understand what your argument is, any time the original calendar is modified where the teachers have to extend, then they get paid additional time. Well, that's a good question, Your Honor. Obviously, it was one that was proposed by a tax of the case, and I can see public policy reasons why that would not be a desirable result. However, the words of the statute mean what they mean. Well, if you use the school district's interpretation, then as long as the teachers get paid the 180 days, and the contract itself does not contain extra language for the modification of the calendar, as long as the contract controls, then no harm, no foul if there's a teacher strike. They still get paid the 180 days. Well, the contract already applies. You don't need a statute to say that the contract applies. Well, evidently, somebody does because the teachers and your client, the class, is claiming that if we work more than the school district calendar, even though we've met our obligation on the contract, we want more money. So somebody thought the contract should be involved somewhere under this statute. I'm not saying it's not involved. The contract requires payment for 180 days of work. The collective bargaining payment. Yes. The employees got paid for 180 days of work. We're not claiming that the contract was violated. We're claiming that in the circumstance where the calendar was extended into the summer, which in this case was not a strike, it was a snow day, that additional payment is required. Remember, the collective bargaining agreement says you shall get X salary for 180 days of work, 175 for support staff, and those work days will be in accordance with the calendar. Off the top of my head, I don't remember whether it says as hereafter amended or not. I can certainly find that if you need that. Does it really need to if it says you're going to be 180 days for the calendar, school calendar year? I don't think it does need to. I think the implication then under the collective bargaining agreement is that if the calendar is amended, then you're paid in accordance with the amended calendar. And that would be for any reason. Correct. But the statute segments out one circumstance when the calendar is extended into the summer. And that is the circumstance. I don't think it says into the summer. Well, beyond the original closing date. At least a necessary extension. Beyond the original closing date. That's why we don't make the argument if this district had scheduled two Saturdays of pupil attendance. I bet my clients would have been gregging. All right? I would give you that. But I wouldn't be here arguing that this statute required additional pay, because that is not an extension beyond the original calendar, beyond the original closing date. That's what the statute says. But you're putting school districts. If we accept your argument, then the legislature, not you, but the legislature, with its language as interpreted by the court, has put school districts across Illinois at extreme risk because the calendar is set in the summer. Right? Yes. I mean, in our district, for example, they haven't even set the August calendar yet. And so you would be placing school districts across the state at extreme risk because when they make a decision in the summer, they really have no, it's a crapshoot as to when they complete. Right? That is not predictable. It would be prudent for a school district to budget for 10 or 15 snow days. Then this would not be an issue. If the original closing date had been June 15th, we wouldn't be here. How do families and everybody else budget for their time based upon? Well, we think that's exactly why the statute has the sentence that it does. It recognizes that there's a tradeoff between meeting school employees to be ready and available to work during the school year, during the original parameters of the opening and the closing date, not specific, you know, are you to go to school on this Saturday or this, you know, teacher institute day, but the beginning and the ending. And that outside of that parameter, there is a recognition that families do need to plan and should be able to plan vacations, and therefore there should be additional pay. But how many snow days were allocated originally by the school district? Five. Five. And they took seven. So if it had been 10, you would have been okay with that? Yes. I don't think we would have had a statutory claim. So, but your analysis goes way beyond snow. You agree with that? Yes. Section 1019 says if the district is unable to provide 176 student attendance days and it becomes necessary to extend beyond the original closing date as a result, then teachers shall be paid or employees shall be paid for such additional time. It says pursuant to the contract. Pursuant to the contract, which we maintain can be read. You can give meaning to those words by saying, well, that means using a per diem rate, which, as you know from serving on the school board, is a standard method of figuring out compensation if, for example, if there are dock days. So that's your argument is on the basis of their regular contracts means per diem? Yes. Even though if it were negotiated in the contract for the extension, they'd still be entitled to a per diem for the extension? If it was explicitly provided for in the collective bargaining agreement for pay beyond the original closing date, then there would not be any more money we would believe. It says they would not be owed money. They would not be owed money under the statute because they would be getting it under the terms of their CBA. Where does it say that in the statute? Are you suggesting that on the basis of their regular contracts that we're just supposed to infer that from that phrase? I think the term regular contract can mean a CBA when there are collectively bargained agreements. There certainly are school workplaces in which there aren't collective bargaining agreements and in which the only contracts there would be would be maybe individual teacher written contracts. In the case of support staff, there may not be contracts at all. It may just be a common law contract of employment, an agreement that you will be paid this salary in exchange for so many days of work. So I think the regular contract can mean any of those things in context. And what did the court do in this case? Apply for a per diem? Yes. I'm sorry, go ahead. The court accepted the plaintiff's argument that the only reasonable meaning of in accordance with their regular contracts is to say, well, that sets a wage rate rather than you're entitled to the minimum wage for those two additional days. You're entitled to your regular wage. Let's be clear, though, about this per diem. Teachers in this collective bargaining agreement are paid an annual salary, correct? Correct. They're not paid an hourly wage. Correct. What the contract says, however, is that if, you know, you had to figure it out, it would be a per diem. The contract actually doesn't say that. Then how did you come up with the per diem rate? The defendant stipulated that if you divide the annual salary by the number of contract days, you get a per diem rate. Okay. I thought you had said to Justice Moore there was a per diem in the contract, but I personally did not see that. If I said that, I misspoke. Okay. Okay, thank you. So there was no per diem rate in here. This is something the court came up with. Something we urged the court to come up with, but yes. I understand. Yes. I understand. All right. I think that's all, unless you have anything further. Thank you. Your Honors, I think my views have been adequately vetted here. I would just emphasize that, in our view, the collective bargaining contracts control any extended calendar period. Unless you have other questions, I'll. I just wanted to ask you about the strike business that I came up with.  And their arguments in court. Do you agree that even if there was a teacher strike, that under their analysis, they would have to be paid because the calendar was being modified? Yes. I agree with Your Honor. Your Honor, if the strike lasted for 10 school days, according to the plaintiffs, they would be entitled to not just 180 days of compensation, but 190 days of compensation, which I think is appropriate. Okay. Thank you. Thank you, counsel, for your arguments. The court takes manner of guidance in the decision.